UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

MICHAEL KANE,
Individually and on behalf others similarly situated
     Plaintiff,

 -vs-                                     Case No.
                                            Hon.

NATIONAL ACTION FINANCIAL SERVICES, INC.,
     Defendant.

## COMPLAINT & JURY DEMAND

*Michael  Kane states  the following claims for relief:*

### Jurisdiction

1.    This Court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d), the TCPA, 47 U.S.C. § 227 *et seq.,*   and 28 U.S.C. §§1331,1337.

2.    This Court also has jurisdiction under the Class Action Fairness Act, as the amount in controversy in this diverse class action exceeds $75,000.   28 U.S.C. § 1332(d), 1453, and 1711-1715.

### Parties

3.    The Plaintiff is Michael Kane, who is a natural person and a resident of Oakland County.

4.    Mr. Kane meets the definition of a "consumer" under 15 U.S.C. § 1692a(3).

5.    The Defendant is National Action Financial Services, Inc. ("NAFS") which is a company located in the state of New York.

6.    NAFS regularly collects debts owed to another and therefore meets the definition of a "debt collector" under the FDCPA 15 U.S.C. § 1692a(6).

7.    At all times relevant to this complaint, NAFS acted as a collection agency on behalf of

Blockbuster Video to collect delinquent and defaulted accounts for Blockbuster Video.

### Venue

8.    The transactions and occurrences which give rise to this action occurred in Oakland County.

9.    Venue is proper in the Eastern District of Michigan.

### General Allegations

10.    Mr. Kane maintains a cellular telephone for his personal use.

11.    Mr. Kane maintains service for that cellular  phone via a "cellular telephone service" as

described in 47 U.S.C. § 227(b)(1)(A)(iii).

12.    He has maintained that cellular phone service since 2003.

13.    Mr. Kane carries this phone with him when he is at work and out of his home.

14.    He maintains this phone for his own personal convenience to maintain contact with his

family and friends.

15.    Mr. Kane does not have an "established business relationship" with Blockbuster Video as

that term is defined in 47 U.S.C. § 227(a)(2).

16.    Mr. Kane does not owe any fees for video rental to  Blockbuster Video.

17.    Mr. Kane never gave  Blockbuster Video his cellular phone number or his consent to call

that number.

18.    Some time prior to 2009, Blockbuster Video engaged NAFS to collect a delinquent balance

on an account open by Ms. Seana Bartlett for video rental.

19.    The delinquent balance on Ms. Bartletts account constituted a "debt" for purposes of 15

U.S.C. § 1692a(5).

20.    Mr. Kane does not know Ms. Bartlett.

21.    NAFS then initiated a series of several hundred phone calls from (800) 613-1802 to Mr.

Kane's cellular phone for the purpose of collecting Ms. Bartlett's debt.

22.    Mr. Kane does not know how Ms. Barlett's Blockbuster Video account came to be

associated with his cellular phone.

23.    Even though Mr. Kane had no established business relationship with either Blockbuster

Video or NAFS, Mr. Kane has received hundreds of calls from NAFS to his cellular phone

seeking payment of fees owed to Blockbuster Video by a Ms. Seana Barlett.

24.    Each of calls at issue in this Complaint occurred within the preceding four years.

25.    In each of these calls, NAFS used an "automatic telephone dialing system," as defined by

47 U.S.C. § 227(a)(1) to initiate the calls to Mr. Kane on his cellular telephone.

26.    In each of these calls, NAFS used a  "an artificial or prerecorded voice" as described in 47

U.S.C. § 227(b)(1)(A) to communicate with Mr. Kane on his cellular telephone.

27.    On occasion, Mr. Kane has answered the phone and heard a prerecorded message from

NAFS.

28.    NAFS failed in these prerecorded messages to notify Mr. Kane that the calls were from a

debt collector.

29.    NAFS left multiple prerecorded messages concerning an alleged debt owed by Ms. Seana

Bartlett to Blockbuster Video on Mr. Kane's mobile phone.

30.    Mr. Kane did not give NAFS or Blockbuster Video express permission to contact him using

his cellular phone.

31.    Mr. Kane is a neuroscientist and has received multiple calls from NAFS while he was

conducting lab tests that required precision and uninterrupted concentration.

32.   The calls from NAFS have caused numerous interruptions and disruptions of his work, social

engagements, and recreation.

33.   Mr. Kane has attempted on numerous occasions to contact NAFS on several occasions over

the past three years to request the calls cease and desist.

34.   Because NAFS's used  prerecorded messages in its collection efforts, Mr. Kane had no

ability to request that the calls end or to complain to a real person.

35.   NAFS designed and maintained its phone system in such a way as to completely prohibit

persons like Mr. Kane from contacting a live person, and informing them of the unwanted

calls.

36.   Specifically, each time Mr. Kane would contact NAFS he would be asked to input his phone

number before being transferred to an agent; this resulted in Mr. Kane receiving an

automated message indicating he was Ms. Seana Bartlett and that an alleged debt was owed.

37.   In August of 2010, NAFS's incoming call system was changed and Mr. Kane was finally

able to press the # button on his phone to indicate he was not the person NAFS intended to

call.

38.   Mr. Kane stopped receiving calls after this change was implemented.

39.   As a result of NAFS's wrongful conduct, Mr. Kane has suffered damages.

### Common Allegations

40.   NAFS falls within the definition of a "person", as defined by 47 U.S.C. § 153(39).

41.   NAFS uses its automated dialer and prerecorded messages to contact large numbers of

persons to collect debts.

4

42.  NAFS failed to vet or verify that the persons it was calling with its automated dialer and prerecorded messages are in fact the person who have expressly consented to being contacted via these means.

43.  Up until August 2010, NAFS provide the recipients of its calls with no means of informing NAFS that they were not responsible for the accounts which NAFS sought to collect.

44.  NAFS's systematic efforts resulted in a sufficient number of improperly placed calls that NAFS needed to change its systems to allow these persons the ability to stop the calls.

45.  NAFS has been the target of numerous complaints concerning its automated dialing and prerecorded messages by persons who have not consented to be contacted via these means.

46.  NAFS did not use its automated dialer or prerecorded voice calls for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(I).

## Class Definition and Class Issues

47.  Mr. Kane brings this action on behalf of himself and a class of all other persons similarly situated, pursuant to Fed. R. Civ. P. 23.

48.  Mr. Kane proposes to represent the following classes:

a.  All persons within the United States who, on or after March 22, 2007, received a non-emergency telephone call from NAFS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls during the transaction that resulted in the debt owed.

b.  All natural persons within the United States who, on or after March 22, 2010, received a voice mail message from NAFS, concerning a consumer debt, where that

message failed to notify the person member that the call was from a debt collector.

49.   A search of internet complaints reveals dozens of persons who have complained of similar

conduct by NAFS.

50.   Based upon these complaints, it appears that there are several hundred class members.

51.   The class is so numerous as to make it impracticable to join all the disparate members of the

class.

52.   This complaint seeks monetary damages under Fed.R.Civ.P. 23(b)(3).

53.   The class claims in this case present common questions of law and fact including whether:

a.   NAFS uses an autodialer to collect its debts;

b.   NAFS uses prerecorded voice messages to collect its debts;

c.   the prerecorded messages used by NAFS properly comply with the FDCPA

requirement that the collector identify that it is a debt collector;

d.   NAFS  made nonemergency calls to Mr. Kane and the class members' cellular

telephones using an automatic telephone dialing system or an artificial or

prerecorded voice;

e.   NAFS had the prior express consent to make calls to Mr. Kane and the class

members' cellular phones using an automated dialer or prerecorded voice;

f.   NAFS's conduct was knowing and/or willful;

54.   These common questions predominate over any question affecting only individual class

members.

55.   Mr. Kane 's claims are typical of the claims of the class members.

56.   Mr. Kane bases his claims and those on behalf of the class upon the same legal and remedial

theories.

57.     Mr. Kane will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims in this case.

58.     Mr. Kane has suffered similar injuries as the members of the classes that he seeks to represent.

59.     Mr. Kane  has retained counsel experienced in handling class action suits involving unfair business practices and consumer law.

60.     Neither Mr. Kane nor his counsel have any interest which might cause them not to vigorously pursue this action.

61.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

62.     No individual class member could be expected to hold a strong interest in individually controlling the prosecution of separate claims against NAFS, because the claim amounts are likely small and involve statutory damages under the TCPA.

63.     Management of these claims will likely present few difficulties because the calls at issue are all automated and the class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

## COUNT  I – Fair Debt Collection Practices Act

64.     Mr.  Kane incorporates the preceding allegations by reference.

65.     At all relevant times NAFS – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

66. NAFS is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

67. At all times relevant to this complaint, NAFS sought to collect a "consumer" debt from Mr. Kane and the class members.

68. The actions of NAFS to collect from Mr. Kane and the class members violated the provisions of the FDCPA.

69. Mr. Kane has suffered damages as a result of these violations of the FDCPA.

**COUNT II – Telephone Consumer Protection Act of 1991 and 47 C.F.R. 16.1200 *et seq.***

70. Mr. Kane incorporates the preceding allegations by reference.

71. NAFS has negligently violated the TCPA, 47 U.S.C. § 227 *et seq.*, in relation to Mr. Kane and the class members.

72. As a result of NAFS's negligent violations of the TCPA, Mr. Kane and class members may recover statutory damages of $500.00 for each and every call in violation of the statute.

73. Alternatively, NAFS has knowingly or wilfully violated the TCPA in relation to Mr. Kane and the class members.

74. As a result of NAFS's negligent violations of the TCPA, Mr. Kane and class members may recover statutory damages of up to $1,500.00 per call in violation of the statute.

**Demand for Jury Trial**

75. Mr. Kane demands trial by jury in this action.

**Demand For Judgment for Relief**

76.     *Accordingly, Mr. Kane requests that the Court:*

a.      *Certify this matter as a class action.*

b.      *Grant statutory damages.*

c.      *Award costs and attorney fees.*

                              Respectfully Submitted,


                              By: s/ Ian B. Lyngklip
                              Ian B. Lyngklip (P47173)
                              LYNGKLIP & ASSOCIATES
                              CONSUMER LAW CENTER, PLC
                              Attorney For Michael Kane
                              24500 Northwestern Highway, Ste. 206
                              Southfield, MI 48075
                              (248) 208-8864
                              IanLyngklip@Att.Net

                              Missy Gould
                              2438 John R. Rd #104
                              Troy, MI 48083
                              (813) 526-1898
                              gouldmissy@hotmail.com

Dated: April 7, 2011